IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

---

```
B.E. TECHNOLOGY, LLC,          )
                               )
     Plaintiff,                )
                               )
v.                             )    No.: 2:12-cv-02834-JPM-tmp
                               )
MATCH.COM LLC,                 )
                               )
     Defendant.                )
```

---

### ORDER DENYING MOTION TO TRANSFER VENUE

---

Before the Court is Defendant Match.com LLC's ("Defendant or "Match.com") Motion to Transfer Venue, filed February 5, 2013.  (ECF No. 32.)  For the reasons that follow, the Motion is DENIED.

## I.  BACKGROUND

This case concerns Defendant Match.com's alleged infringement of United States Patent No. 6,628,314 (the "'314 patent").  (ECF No. 1.)  Plaintiff B.E. Technology, LLC ("Plaintiff or "B.E."), is the assignee of the '314 patent (ECF No. 37 at 2), currently owning "all right, title, and interest in the '314 patent, and has owned all right, title, and interest throughout the period" of the alleged infringement (ECF No. 1 ¶ 10).

B.E. alleges that Match.com infringed the '314 patent "by using a method of providing demographically targeted advertising

that directly infringes at least Claim 11 of the '314 patent either literally or under the doctrine of equivalents." (<u>Id.</u> ¶ 11.)

B.E. filed a Complaint in this Court on September 22, 2012. (ECF No. 1.)  Match.com filed its Answer to the Complaint and Counterclaim on December 31, 2012 (ECF No. 19), and its Motion to Transfer Venue on February 5, 2013 (ECF No. 32).  B.E. filed its Memorandum in Opposition to Defendant's Motion to Transfer Venue on February 22, 2013.  (ECF No. 37.)  With leave of Court, Match.com filed a Reply Memorandum in Support of Its Motion to Transfer on March 11, 2013.  (ECF No. 40.)  On February 11, 2013, Match.com filed a Motion to Stay pending resolution of its Motion to Transfer Venue.  (ECF No. 34.)  The Court granted Match.com's Motion to Stay on February 12, 2013.  (ECF No. 35.)

Match.com seeks to transfer this case to the Northern District of California, or, alternatively, to the Northern District of Texas, where its headquarters are located.  (ECF No. 32-1 at 1.)  To support its Motion, Match.com contends that "cost and convenience of attendance" for witnesses and the "interests of justice" and judicial efficiency favor transfer to the Northern District of California.  (<u>Id.</u>)  Match.com argues that it "has already identified multiple non-party witnesses likely to have relevant information" regarding the patent-in-suit who are located in the Northern District of California.

2

(Id.)  Further, Match.com asserts that it has no "offices
employees, documents, computer source code, or any other
business operations" in the Western District of Tennessee.  (Id.
at 1.)

Alternatively, Match.com requests transfer to the Northern
District of Texas, which is its principal place of business, the
location of "all of [its] relevant documents," and the location
of "all of [its] employees with knowledge relevant to this
litigation."  (Id. at 2.)

B.E. opposes Match.com's Motion to Transfer.  B.E. is a
limited-liability company incorporated in Delaware.  (ECF No. 1
¶ 2.)  B.E. was originally registered in Michigan, but formally
registered to conduct business in Tennessee in September 2012.
(ECF No. 37 at 2.)  B.E. contends that Memphis, Tennessee, is
its principal place of business.  (ECF No. 1 ¶ 2.)  Martin David
Hoyle ("Hoyle"), B.E.'s founder and CEO, is the named-inventor
of the '314 patent.  (ECF No. 37 at 1, 2.)  Hoyle asserts he has
been a resident of Tennessee since April, 2006.  (Id.)

B.E. argues that transfer is inappropriate because it has
substantial connections with this district.  B.E. argues that
Hoyle has been "present in this District since 2006, and B.E.
since at least 2008," and that this district is B.E.'s principal
place of business, from which "Hoyle controls and directs B.E.'s
business activities."  (Id. at 5-6.)  Further, B.E. argues that

its corporate documents, including documents relating to the "conception and reduction to practice" of the patent-in-suit, are located in this District.  (Id. at 6.)

**II. STANDARD**

Match.com moves the Court to transfer this case to the Northern District of California, or, alternatively, to the Northern District of Texas, pursuant to 28 U.S.C. § 1404(a). (ECF No. 32.)  The statute provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate."  Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009).

In determining whether to transfer a case under § 1404(a), the court must first determine whether the claim could have been brought in the transferee district.  28 U.S.C. § 1404(a) (allowing transfer to any other district in which the claim "might have been brought").  Once the court has made this threshold determination, the court must then determine whether party and witness "convenience" and "the interest of justice" favor transfer to the proposed transferee district.  Reese, 574

4

F.3d at 320; Esperson v. Trugreen Ltd., No. 2:10-cv-02130-STA-cgc, 2010 WL 4362794, at *5 (W.D. Tenn. Oct. 5, 2010), adopted 2010 WL 4337823 (W.D. Tenn. Oct. 27, 2010).  In weighing these statutory factors, the court may still consider the private- and public-interest factors set forth in the pre-Section 1404(a) case, Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947), but courts are not burdened with "preconceived limitations derived from the forum non conveniens doctrine."  Norwood v. Kirkpatrick, 349 U.S. 29, 31 (1955) (quoting All States Freight v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952)) (internal quotation marks omitted); Esperson, 2010 WL 4362794, at *5.  The United States Court of Appeals for the Sixth Circuit has stated that when deciding "a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  Moore v. Rohm & Haas Co., 446 F.3d 643, 647 n.1 (6th Cir. 2006).

Additionally, the "interest of justice" factor has been interpreted broadly by courts, influenced by the individualized circumstances of each case.  The United States Court of Appeals for the Federal Circuit has set forth a non-exhaustive list of pertinent public-interest factors:

> The public interest factors include (1) the
> administrative difficulties flowing from court
> congestion; (2) the local interest in having localized
> interests decided at home; (3) the familiarity of the
> forum with the law that will govern the case; and (4)
> the avoidance of unnecessary problems of conflicts of
> laws or in the application of foreign law.

In re Acer Am. Corp., 626 F.3d 1252, 1254 (Fed. Cir. 2010); see

also In re Nintendo Co., Ltd., 589 F.3d 1194, 1198 (Fed. Cir.

2009) (finding the local-interest factor weighed heavily in

favor of transfer); Cincinnati Ins. Co. v. O'Leary Paint Co.,

676 F. Supp. 2d 623, 633 (W.D. Mich. 2009) (considering

additional factors such as the relative docket congestion of the

transferor and transferee districts).

Initially, B.E. argues that there is a strong presumption

in favor of its choice of forum, and that its choice of forum

should not be disturbed unless the defendant carries its burden

to demonstrate that the balance of convenience strongly favors

transfer.  (ECF No. 37 at 4-8.)  B.E.'s argument is erroneously

derived from the more stringent forum-non-conveniens standard.

Compare Hunter Fan Co. v. Minka Lighting, Inc., No. 06-2108

M1/P, 2006 WL 1627746 (W.D. Tenn. June 12, 2006) (applying the

appropriate private- and public-interest factors but relying on

the forum-non-conveniens doctrine to accord strong deference to

the plaintiff's choice of forum), with OneStockDuq Holdings, LLC

v. Becton, Dickinson, & Co., No. 2:12-cv-03037-JPM-tmp, 2013 WL

1136726, at *3 (W.D. Tenn. Mar. 18, 2013), and Roberts Metals,

Inc. v. Florida Props. Mktg. Grp., Inc., 138 F.R.D. 89, 92-93
(N.D. Ohio 1991) (recognizing defendants need to make a lesser
showing to overcome plaintiff's choice of forum under
§ 1404(a)), aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994).
Although there is a strong presumption in favor of the
plaintiff's choice of forum under the doctrine of forum non
conveniens, under § 1404(a), a plaintiff's choice of forum may
be considered, but is entitled to less deference.  Discussing
the difference between the common-law doctrine of forum non
conveniens and the federal transfer-of-venue statute in Norwood,
the Supreme Court stated,

> When Congress adopted § 1404(a), it intended to
> do more than just codify the existing law on forum non
> conveniens. . . . [W]e believe that Congress, by the
> term "for the convenience of parties and witnesses, in
> the interest of justice," intended to permit courts to
> grant transfers upon a lesser showing of
> inconvenience.  This is not to say that the relevant
> factors have changed or that the plaintiff's choice of
> forum is not to be considered, but only that the
> discretion to be exercised is broader.

Norwood, 349 U.S. at 32; see also Lemon v. Druffel, 253 F.2d
680, 685 (6th Cir. 1958) ("The choice of the forum by the
petitioner is no longer as dominant a factor as it was prior to
the ruling in Norwood v. Kirkpatrick[.]"); Esperson, 2010 WL
4362794, at *5-6.

Defendant's burden under § 1404(a) is to demonstrate that a
change of venue to the transferee district is warranted.  See

7

<u>Eaton v. Meathe</u>, No. 1:11-cv-178, 2011 WL 1898238, at *2 (W.D. Mich. May 18, 2011); <u>Amphion, Inc. v. Buckeye Elec. Co.</u>, 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003); <u>Roberts Metals, Inc.</u>, 138 F.R.D. at 93.  "Merely shifting the inconvenience from one party to another does not meet Defendant's burden."  <u>McFadgon v. Fresh Mkt., Inc.</u>, No. 05-2151-D/V, 2005 WL 3879037, at *2 (W.D. Tenn. Oct. 21, 2005).  "[T]he movant must show that the forum to which he desires to transfer the litigation is the more convenient one vis a vis the Plaintiff's initial choice."  <u>Roberts Metals, Inc.</u>, 138 F.R.D. at 93 (quoting <u>Mead Corp. v. Oscar J. Boldt Constr. Co.</u>, 508 F. Supp. 193, 198 (S.D. Ohio 1981)) (internal quotation marks omitted).  If the court determines that the "balance between the plaintiff's choice of forum and defendant's desired forum is even, the plaintiff's choice of [forum] should prevail."  <u>Stewart v. Am. Eagle Airlines, Inc.</u>, No. 3:10-00494, 2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010).

## III. ANALYSIS

As an initial matter, Match.com asserts that it consents to jurisdiction in the Northern District of California. (<u>See</u> ECF No. 32 at 10.)  While Match.com makes no explicit argument that the case could have been brought in the Northern District of Texas, the Court finds that jurisdiction there would be proper, as it is Match.com's principal place of business and the allegedly infringing acts took place there.  B.E. does not

dispute that the instant case could have been brought in either proposed transferee district.  (See ECF No. 37 at 4.)  The Court agrees that B.E. could have brought suit in the Northern District of California or the Northern District of Texas. Therefore, the only issue remaining is whether the balance of the statutory factors — the convenience to the witnesses, the convenience to the parties, and the interest of justice — favors transfer to the Northern District of California or the Northern District of Texas.  The Court will address each statutory factor separately and balance these factors to determine whether transfer to the Northern District of California or the Northern District of Texas is proper pursuant to § 1404(a).

### A.   Convenience of the Witnesses

When asserting that a transferee district is more convenient for witnesses, a party "must produce evidence regarding the precise details of the inconvenience" of the forum chosen by the plaintiff.  Esperson, 2010 WL 4362794, at *8.  To satisfy its burden, the movant must do "more than simply assert[] that another forum would be more appropriate for the witnesses; he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district."  Id. (quoting Roberts Metals, Inc., 138 F.R.D. at 93).  Further, "[t]o sustain a finding on [this factor] . . . the party asserting witness inconvenience has the burden to

proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable a court to assess the materiality of evidence and the degree of inconvenience." Eaton, 2011 WL 1898238, at *3 (quoting Rinks v. Hocking, 1:10-CV-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011)) (internal quotation marks omitted).  It is the "materiality and importance of the testimony of prospective witnesses, and not merely the number of witnesses," that is crucial to this inquiry.  Rinks, 2011 WL 691242, at *3.

Match.com argues that considerations of witness convenience and cost weigh in favor of transfer to the Northern District of California.  (ECF No. 32-1 at 2.)  Match.com contends that the majority of its potential third-party witnesses are located in the Northern District of California.  (Id. at 5-6.)  Match.com also argues that "several other Defendants have identified at least eight additional patents constituting potential invalidating prior art with inventors and/or assignees in California."  (Id. at 6-7.)  Alternatively, Match.com argues that the Northern District of Texas is the more convenient forum because all of its "employees with knowledge relevant to this litigation" are located there.  (Id.)

In response, B.E. does not affirmatively identify any witnesses it may call, but states that the Western District of Tennessee is more convenient for it than the Northern District

10

of California.  (ECF No. 37 at 8.)  As Hoyle is the inventor of the patent-in-suit and a party, it is presumed his testimony will be necessary and material to B.E.'s case.  B.E. states that Hoyle is located in the Western District of Tennessee.  (Id. at 1-2.)  B.E. also contends that the Western District of Tennessee is the more convenient forum for Match.com's Texas-based employees.  (Id. at 9.)

Because the convenience of party and non-party witnesses is given different weight, the Court will analyze the witnesses separately.  See Azarm v. $1.00 Stores Servs., Inc., No. 3:08-1220, 2009 WL 1588668, at *4 (M.D. Tenn. June 5, 2009) ("[T]he convenience of potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty consideration, because it is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not.").

### 1.  Party Witnesses

Match.com does not present any argument or evidence showing that its party witnesses are located in the Northern District of California.  Having established no connection to the Northern District of California regarding party witnesses, this factor does not weigh in favor of transfer.

Instead, Match.com relies on the declaration of Clark Rothrock, its Chief Technical Officer, who states, "[t]he employees who design and develop the accused instrumentalities are located in Dallas, Texas." (Rothrock Decl., ECF No. 32-28, ¶ 5.) Rothrock also states that "the employees responsible for maintaining" all of Match.com's "sales, financial, or marketing documentat[ion]" are located in Dallas, Texas. (Id. ¶ 6.) In its Reply, Match.com defends its general identification of potential employee-witnesses by stating that identifying its witnesses with more specificity at this early stage in the litigation would be "unreasonable" and "contrary to Federal Circuit precedent." (ECF No. 40 at 7 (citing In re Genentech, Inc., 566 F.3d 1338, 1343-44 (Fed. Cir. 2009)).)

Match.com notes generally that travel to the transferor district would impose an inconvenience for its witnesses, but does not provide any evidence showing that its employees will be unwilling to testify in the Western District of Tennessee if asked to do so. (ECF No. 32-1 at 11.) Further, Match.com does not state that the absence of these potential employee-witnesses from its offices will have an adverse effect on Match.com's operations. See Esperson, 2010 WL 4362794, at *8. Courts have noted that "normally a corporation is able to make its employees available to testify when needed." Clark v. Dollar Gen. Corp., No. 3-00-0729, 2001 U.S. Dist. LEXIS 25975, at *9 (M.D. Tenn.

Mar. 6, 2001); <u>see also</u> <u>Zimmer Enters. v. Atlandia Imps., Inc.</u>,
478 F. Supp. 2d 983, 991 (S.D. Ohio Mar. 14, 2007) (finding that
the convenience of witnesses who are employees "will not
ordinarily be considered, or at least, that the convenience of
such employees will not generally be given the same
consideration as is given to other witnesses"). Accordingly, it
appears that Match.com's employees will be able to attend absent
any evidence to the contrary.

Therefore, regarding Match.com's potential employee-
witnesses, Match.com does not satisfy its burden. Match.com
argues that the burden of proceeding in the Northern District of
Texas is reduced when comparing its own employee witnesses and
Hoyle, and the burden is the same when comparing travel to
either proposed transferee district for B.E.'s potential
witnesses whom Match.com believes reside in Michigan or
Louisiana. (ECF No. 32-1 at 9, 13.) B.E. asserts, however,
that it has no witnesses in Michigan or Louisiana, and that
Hoyle is located in the transferor district. (ECF No. 37 at 6,
9-11.) Accordingly, it is equally inconvenient for B.E.'s
witness, Hoyle, to travel to the Northern District of Texas.

The Court agrees that Match.com's employees related to the
development and operation of the accused products are located in
the Northern District of Texas, and that their testimony is
likely material. Match.com, however, has not indicated how many

employees it would be inclined to call as potential witnesses and has not provided any indication of the necessity of those employees to its business. As a result, the Court cannot assess the degree to which Match.com's business would be disrupted compared to the disruption B.E. will endure due to its CEO's absence should the case be transferred. Accordingly, the Court finds transfer would only shift the inconvenience to B.E. See McFadgon, 2005 WL 3879037, at *2.

Therefore, because § 1404(a) provides for transfer "to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient," distance of travel for employee-witnesses does not weigh in favor of transfer. Hunter Fan, 2006 WL 1627746, at *2 (citing Van Dusen v. Barrack, 376 U.S. 612, 645-46 (1964)).

Match.com further argues that this factor strongly favors transfer because its employees are located in the Northern District of Texas, whereas B.E. has only one likely witness, Hoyle, who is also an interested party. (ECF No. 32-1 at 5, 18; ECF No. 40 at 7-8.) Although Match.com does not specifically list its witnesses, and though its assertion is imprecise as to the materiality of the witnesses' testimony, it is not asserted that their testimony will not be relevant and material in this case. Match.com's general statement, however, that all of its employees are located in the Northern District of Texas does not

14

aid the court in assessing (1) what the testimony of such material witnesses will be; (2) whether such witnesses will be unable to attend; or (3) whether and to what extent such witnesses will be inconvenienced by testifying in this district.

Match.com relies on a United States District Court for the Eastern District of Virginia case, Koh v. Microtek International, Inc., 250 F. Supp. 2d 627 (E.D. Va. 2003), for the proposition that although a motion to transfer must normally contain specifics as to the "names, titles, location, and the content of their testimony" (ECF No. 40 at 6), district courts can infer that witnesses are located near the infringing activities and "that witnesses involved in the design and manufacture of the accused products are material to the transfer analysis" (ECF No. 40 at 7). Recognizing that Koh is persuasive authority, the Court also notes that Match.com misapplies it to the facts of the instant case. In Koh, the court stated, "although the Movants have not set out specifically any potential testimony, they have identified one individual who is located in California and two entities located in California, which participated in conception and reduction to practice of the accused product." Koh, 250 F. Supp. 2d at 637. In the instant case, Match.com has not identified specific witnesses that "participated in [the] conception and reduction to practice of the accused products." To the contrary, Match.com has

generally asserted that all of its employees working on the accused products are located in the Northern District of Texas. (Rothrock Decl., ECF No. 32-28, ¶¶ 5-6.)  These generalizations do not assist the Court in determining how many employee-witnesses Match.com will actually seek to call and whether they will be inconvenienced by testifying in the Western District of Tennessee.  Match.com cannot rely on such "bare allegations" to satisfy its burden.  Esperson, 2010 WL 4362794, at *8.

While B.E. did not specifically identify any witnesses, it is presumed that Hoyle, as CEO and inventor of the patent-in-suit, will be a key witness.  B.E., however, does not have the burden to identify more witnesses for the purposes of this Motion.  Despite B.E. not identifying any witnesses, Match.com's general identification of material witnesses who are Match.com employees does not satisfy its burden on this factor.  A simple numerical advantage is insufficient on the issues raised by a motion to transfer.  As a result, the witness-convenience factor does not weigh in favor of transfer.

### 2.   Non-Party Witnesses

While convenience to party witnesses is an important consideration, "it is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight." Steelcase Inc. v. Smart

16

Techs., 336 F. Supp. 2d 714, 721 (W.D. Mich. Mar. 5, 2004) (citation omitted) (internal quotation marks omitted).

Match.com does not present any argument or evidence that any of its potential third-party witnesses are located in the Northern District of Texas.  Having established no connection to the Northern District of Texas regarding non-party witnesses, this factor does not weigh in favor of transfer.

Instead, Match.com argues that it "is aware or at least nine individuals who possess knowledge regarding potentially invalidating prior art who live in or near California." (ECF No. 32-1 at 6.)  Match.com further argues that "several other Defendants have identified at least eight additional patents constituting potential invalidating prior art with inventors and/or assignees in California." (Id. at 7.)  To support its contention, Match.com submits these prior-art witnesses and their last-known addresses based on webpages and documents filed with the United States Patent and Trademark Office (Id. at 6-8 (citing ECF Nos. 32-12 through 32-22).)  Match.com argues that "depositions[] and live testimony of third-party witnesses located in the Northern District of California will be prevalent in this litigation." (Id. at 11.)  Match.com claims that it will not be able to compel these witnesses to testify at trial if the case remains in Tennessee, but will be able to compel

those witnesses that live in California to testify at trial in the Northern District of California.  (Id. at 10-11.)

B.E. argues that the convenience of third-party witnesses is not entitled to great weight in the instant case because Match.com has not established that the "third party testimony will be material or important." (ECF No. 37 at 12.)  B.E. further argues that prior-art testimony is "almost certain to be severely limited at the time of trial" and, therefore, such testimony does not weigh in favor of transfer.  (Id.)

B.E. acknowledges that Match.com has identified specific third-party witnesses located in the Northern District of California regarding prior art and that those witnesses would not be subject to the Western District of Tennessee's subpoena power, but states that Match.com has not "presented any evidence that the inventors and assignees are unwilling to testify in Tennessee or how they would be inconvenienced by testifying here." (Id.)  B.E. notes that Match.com concedes that it will be able to subpoena these potential third-party witnesses for testimony or document production in their home districts.  (Id. 13.)  Further, B.E. argues that Match.com "does not address the relevance, materiality, and importance of the testimony any witness who allegedly could not be subpoenaed might give." (Id.)

18

The availability of compulsory process for unwilling witnesses is a consideration closely related to the convenience-of-witnesses factor and the costs of procuring the witness, and therefore is an important consideration for the Court.  See, e.g., In re Acer, 626 F.3d at 1255; Rinks, 2011 WL 691242, at *4.  Whether this factor should be given considerable weight depends on the materiality of the testimony to the resolution of the case.  Rinks, 2011 WL 691242, at *4.  A federal court in the Northern District of California would be able to compel the majority of the identified prior-art witnesses to testify at trial, whether these witnesses are located within the Northern District of California or elsewhere in the state.  See Fed. R. Civ. P. 45(b)(2); Brackett v. Hilton Hotels Corp., 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008) ("The California district courts have the power to subpoena witnesses throughout the state pursuant to [Federal Rule of Civil Procedure] 45(b)(2)(C) . . . .").  In contrast, the majority of the prior-art witnesses would not be subject to the subpoena power in this District or the Northern District of Texas, see Fed. R. Civ. P 45(c)(3)(A)(ii), but would be available for deposition in the Northern District of California if unwilling to testify in this District.  Therefore, the testimony of such witnesses potentially would "not be live and therefore could be less persuasive." Rinks, 2011 WL 691242, at *4.

19

The Court finds that Match.com has met its burden to show the nature of the third-party witnesses testimony, and that the testimony is likely material to Match.com's invalidity and non-infringement contentions.  To the extent the non-party witnesses' testimony may be presented by deposition, however, witness inconvenience would not be an issue.  While Match.com sets forth the fact that the prior-art witnesses would not be subject to subpoena in the transferor district, the Court recognizes that the same is true if the case is transferred to the Northern District of Texas.  Match.com's general statement is, therefore, insufficient to allow the Court to determine whether live testimony of Match.com's non-party witnesses is necessary.  As a result, this factor weighs only slightly in favor of transfer to the Northern District of California, and does not weigh in favor of transfer to the Northern District of Texas.

**B.   Convenience of the Parties**

Match.com argues that the convenience of the parties requires the Court transfer this action to the Northern District of California, or, alternatively, to the Northern District of Texas.  (ECF No. 32-1 at 1-2.)  While Match.com organizes its arguments somewhat differently than the Court, the Court finds the considerations relevant to the convenience-of-the-parties

factor are the location of the sources of proof and the parties'
financial hardships due to litigation in the chosen forum.

### 1.   Location of Sources of Proof

Regarding transfer to the Northern District of California,
Match.com argues that many of the potential third-party
witnesses are likely to have relevant documents located in that
district.  (ECF No. 32-1 at 14.)  Match.com does not contend any
of its own documentation is located in the Northern District of
California, but that all of its "relevant documents are located
in the Northern District of Texas, including, but not limited
to, Match.com's technical documents and source code and
Match.com's financial and marketing documents."  (ECF No. 32-1
at 17 (citing Rothrock Decl., ECF No. 32-28, ¶¶ 5-6).)

Additionally, Match.com presumes that B.E.'s documents are
located in Michigan or Louisiana, not the Western District of
Tennessee, as B.E.'s office address was listed on a 2011 patent
application as Saginaw, Michigan, and Hoyle's residence was
listed as New Orleans, Louisiana.  (ECF No. 32-1 at 13 (citing
ECF No. 32-5).)  To further support this presumption, Match.com
argues that the Court should infer that B.E.'s "financial
records, tax records, and patent prosecution files all reside in
Michigan" because Hoyle stated that B.E.'s accountant and patent
attorney live in Michigan, and B.E. maintained a registered
office there.  (ECF No. 40 at 5; see also ECF No. 32-1 at 13-

14.)  Match.com argues that "the burden associated with
accessing [these documents] will be approximately the same,
regardless of whether this litigation occurs in Tennessee or
California."  (ECF No. 32-1 at 13.)

B.E. argues that, because its CEO resides in the Western
District of Tennessee, its corporate documents and records,
"including documents demonstrating the conception and reduction
to practice of [the patents-in-suit]," are located in the
Western District of Tennessee.  (ECF No. 37 at 6, 14.)  B.E.
notes that Match.com stated all of its sources of proof are
located in the Northern District of Texas, not the Northern
District of California, and B.E.'s own sources of proof are
located in Tennessee and have been maintained there for years.
(Id. at 14.)  B.E. also contends that "the location of relevant
documentary evidence is increasingly less important in deciding
motions to transfer," and that because documents can be
exchanged electronically, the weight given this factor should be
minimal.  (Id.)  B.E. finally argues that this factor does not
weigh in favor of transfer because "it can be expected that
Match.com will eventually produce its documents to B.E.'s lead
counsel in California, not to B.E. in Tennessee."  (Id. at 15.)

As an initial matter, the Court disagrees with B.E.'s
contention that advances in electronic document transfer reduce
the importance of the location-of-sources-of-proof factor.  This

22

notion has been expressly rejected by the Federal Circuit.  See,
e.g., In re Link_A_Media Devices Corp., 662 F.3d 1221, 1224
(Fed. Cir. 2011) (reversing a district court that did not
consider the factor, stating, "While advances in technology may
alter the weight given to these factors, it is improper to
ignore them entirely"); In re Genentech, 566 F.3d at 1345-46
(finding clear error where a district court "minimized the
inconvenience of requiring the petitioners to transport their
documents by noting that '[t]he notion that the physical
location of some relevant documents should play a substantial
role in the venue analysis is somewhat antiquated in the era of
electronic storage and transmission'" (quoting Sanofi-Aentis
Deutschland GmbH v. Genentech, Inc., 607 F. Supp. 2d 769, 777
(E.D. Tex. 2009))).

     The Court agrees that it is likely that the sheer volume of
documents Match.com has in its possession outnumbers the patent-
related documents in B.E.'s possession, but the Court disagrees
that this is enough to tip the balance in favor of transfer.

     The Court finds that Match.com's presumptions about the
locations of B.E.'s proof do not contradict B.E.'s argument that
relevant documents are located in the transferor district.
Further, the Court does not find that the location of B.E.'s
accountant or patent attorney undermines its argument that

sources of proof relevant to the instant case are located in the transferor district.

The Court finds that both parties maintain documents in their respective districts, but that additional relevant documents are located in the Northern District of California. The Court also finds that these documents are likely integral to the proceedings.  Match.com's reliance on In re Genentech is misplaced.  (See ECF No. 32-1 at 14.)  In In re Genentech, the court found that transfer was appropriate because all of the movants' relevant documents were located in the transferee district or within that district's subpoena power, while there were no relevant documents in the transferor district.  See In re Genentech, 566 F.3d at 1345-46.  In the instant case, Match.com indicated that its relevant documents are located in the Northern District of Texas, while relevant third-party documents are likely located in the Northern District of California.  Accordingly, some relevant documents will fall outside the subpoena power of one of the two transferee districts.  B.E. has shown that its own relevant documents are located in Tennessee.  Taken together, the aforementioned facts indicate that as to the location of the sources of proof, the volume of proof located in the Northern District of Texas may make it a slightly more convenient venue.  This factor, however, is not sufficient, by itself, to require transfer.

### 2.   Financial Hardships Attendant to Litigating in the Chosen Forum

Match.com argues that travel to Tennessee and the attendant costs would be a great inconvenience to the witnesses located in California.  (ECF No. 32-1 at 12-13.)  Match.com argues that "this litigation will be significantly less burdensome and costly for the parties if it is transferred to the Northern District of California."  (Id. at 12.)

B.E. states that it "would face a financial burden by having to litigate in the Northern District of California."  (ECF No. 37 at 16.)  B.E.'s CEO Hoyle states that "B.E. will incur expenses it will not incur if the case remains in Memphis."  (Hoyle Decl., ECF No. 37-1, ¶ 9.)  B.E. also states that "[i]t is reasonable to require companies with the wealth and size of Match[.com] to litigate in jurisdictions in which they regularly conduct business."  (ECF No. 37 at 8.)  Further, B.E. notes that Match.com "does not contend that is it financially incapable of bearing the expense of litigation in the Western District of Tennessee."  (Id. at 16.)

The Court has considered "the relative ability of litigants to bear expenses in any particular forum" among the factors in a § 1404(a) case.  Ellipsis, Inc. v. Colorworks, Inc., 329 F. Supp. 2d 962, 970 (W.D. Tenn. 2004).  In the instant case, B.E.'s CEO stated that the company will incur additional

25

expenses, but it has not shown with any specificity how detrimental those expenses would be to the company.  Further, while Hoyle stated that his personal financial status would be adversely affected by litigating in either proposed transferee district, he did not state why or how his personal finances would impact B.E., the party to the instant case.  (See Hoyle Decl., ECF No. 37-1, ¶ 9.)  Regarding Match.com, the Court finds that its ability to bear expenses in this forum is not a dispositive factor in denying Match.com's Motion.  But see Siteworks Solutions, LLC v. Oracle Corp., No. 08-2130-A/P, 2008 WL 4415075, at *4 (W.D. Tenn. Sept. 22, 2008) (finding the relative financial strengths of the parties did not weigh in favor of transferring the case, as the party opposed to transfer showed it "ha[d] no net worth, very little revenue, no gross profits, no assets, and [would have to] borrow from its owners in order to pay the litigation expenses").  The Court finds that the evidence presented is insufficient to make a showing that B.E. or Match.com will be adversely affected by litigating in any of the proposed forums.  The paramount consideration remains whether the Northern District of California, or the Northern District of Texas, is more convenient to the parties than B.E.'s chosen forum.

With respect to convenience, the Court finds this factor does not weigh in favor of transfer.  While Match.com has made a

26

showing that costs would be reduced for its potential third-party witnesses if the case were transferred, it has not made such a showing for its employee witnesses in Texas nor that its business would be disrupted in an appreciable manner should the case remain in the Western District of Tennessee.  Additionally, B.E. has made a showing that its business would be disrupted in having to prosecute the instant case in either proposed transferee district.  Match.com has shown that the proposed transferee districts are more convenient forums for it and its respective witnesses, but it has not shown that either district is a more convenient forum for both parties.  As a result, the hardship to Match.com does not indicate transfer is more convenient.

### C.  Interests of Justice

Match.com argues that transfer to the Northern District of California or Northern District of Texas is appropriate based on additional considerations that pertain to the interests-of-justice factor.  (ECF No. 32-1 at 15-19; ECF No. 40 at 8-9.)  These considerations include the "public-interest concerns, such as systemic integrity and fairness," of the proceedings.  See Moore, 446 F.3d at 647 n.1.  In the instant case, the Court will consider the relative trial efficiency of the transferee and transferor districts and the localized interest in the litigation.

1.   **Trial Efficiency**

Match.com argues that this factor is neutral as it concerns transfer to either proposed transferee district.  Match.com contends that the factor is neutral because while "the median time to trial in California for a patent case is 2.72 years, (compared to a median time to trial in the Western District of Tennessee of 20.7 months)," "B.E. does not make or sell any product" and therefore its place in the market is not threatened by a delay in the proceedings.  (ECF No. 32-1 at 16 (citing ECF No. 32-23 and ECF No. 32-24 (footnotes omitted)).)  Regarding the Northern District of Texas, Match.com argues that "the median time to trial is nearly identical [to the median time in the transferor district] and the judges average eighty-eight (88) fewer pending cases than those in the Western District of Tennessee."  (Id. at 19 (citing ECF No. 32-26 and ECF No. 32-24).)

B.E. argues that transfer to the Northern District of California "would likely delay trial of this case by at least one year."  (ECF No. 37 at 17.)  B.E. cites 2012 statistics for the Northern District of California and the Western District of Tennessee to illustrate that the median time from filing to trial in the Northern District of California was 32.7 months, while the median time from filing to trial in the Western District of Tennessee was 18.8 months.  (Id. (citing ECF No. 37-

28

4).)  Regarding transfer to the Northern District of Texas, B.E. admits that transfer to that district "would have a less dramatic impact on when this case would be tried" as there is only an approximately one-month difference in median times from filing to trial between the two districts.  (Id. at 17.)

Reviewing the statistics and the parties' arguments, the Court finds this factor neutral to its determination of whether the Northern District of California or the Northern District of Texas is the more convenient forum.

### 2.  Local Interest

Match.com argues that the Northern District of California has a "substantial local interest" in this case because "[m]any of the Defendants maintain their principal place of business in [the district]" and the Northern District of California has an interest in "adjudicating claims calling into question the activities of companies and employees who reside in the Distrcit."  (ECF No. 32-1 at 15 (citing In re Hoffman-LaRoche, 587 F.3d 1333, 1336 (Fed. Cir. 2009)).)  Match.com asserts that the same is true concerning the local interest in the Northern District of Texas, while additionally noting that all of its "employees and their technological development activities" are located there.  (Id. at 18.)  Finally, Match.com argues that B.E.'s ties to the Western District of Tennessee should be

discounted because it manufactured those ties in anticipation of litigation.  (Id. at 3-5, 15; see also ECF No. 40 at 2-6.)

B.E. argues that the Western District of Tennessee has a substantial local interest in the instant case because the holder of the patent-in-suit is located here.  (ECF No. 37 at 17.)  B.E. also asserts that its ties to Tennessee are not "recent, ephemeral, or manufactured for the purposes of litigation."  (Id. at 18.)  Hoyle stated that he has resided in the Western District of Tennessee since 2006, that Memphis is B.E's principal place of business, and that the sources of proof pertinent to the instant case are located in this District.  (Hoyle Decl., ECF No. 37-1, ¶¶ 2-4, 7-8.)  Regarding the local interest of each transferee district, B.E. notes that Match.com "does not reside in the Northern District of California, so that District has particularly little interest in resolving this dispute" (ECF No. 37 at 18), and the Northern District of Texas's interest in adjudicating the claims of its residents does not out outweigh the Western District of Tennessee's interest in adjudicating the claims of its own residents.  (Id.)

The Court finds that this factor does not weigh in favor of transfer to either proposed district.  Review of the record indicates that Match.com does not have strong local ties to the Northern District of California, but does have strong local ties with the Northern District of Texas.  Match.com indicated that

"many" defendants maintain their principal places of business in the Northern District of California, but Match.com is admittedly not one of those defendants as its principal place of business and the location of all its employees and relevant documents is the Northern District of Texas.  The Court declines to consider the particularities of defendants in other pending actions to determine the weight given this factor.  See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (stating motions to transfer venue pursuant to § 1404(a) are adjudicated "according to an individualized, case-by-case consideration of convenience and fairness . . . [and] balance [of] a number of case-specific factors)"; accord United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc., 667 F. Supp. 2d 987, 992 (W.D. Tenn. 2010).

The Court also finds that B.E.'s connection to the Western District of Tennessee was not manufactured for the purposes of litigation.  B.E.'s founder and CEO, who is also the inventor of the patent-in-suit, has resided in the district for seven years. B.E.'s connections, therefore, are neither "recent" nor "ephemeral."  As a result, Match.com has not demonstrated that the Northern District of California's local interest outweighs that of the Western District of Tennessee.  Additionally, Match.com has not demonstrated that the Northern District of Texas's local interest outweighs that of the Western District of Tennessee.

**IV.   CONCLUSION**

For the foregoing reasons, the Court finds that, in balancing the statutory factors, Match.com has not demonstrated that the Northern District of California or the Northern District of Texas is a more convenient forum than the Western District of Tennessee.   Therefore, Match.com's Motion to Transfer Venue is DENIED.

Accordingly, the Court hereby LIFTS the February 12, 2013, stay of all proceedings.  (ECF No. 35.)  Regarding B.E.'s Motion to Dismiss and Motion to Strike, filed January 25, 2013 (ECF No. 30), Match.com shall have thirteen (13) days from the date of entry of this Order, up to and including July 29, 2013, to file its Responses to B.E's Motions.

**IT IS SO ORDERED** this 16th day of July, 2013.

/s/ Jon P. McCalla_____
CHIEF U.S. DISTRICT JUDGE